IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT FLETCHER, | ) | CASE NO.: 1:09 CV 1925 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| CITY OF CLEVELAND, *et al.*, | ) | |
| | ) | MEMORANDUM OPINION |
| Defendants. | ) | AND ORDER |
| | ) | |

This matter is before the Court on Defendant, Cuyahoga County's Motion for Summary Judgment (ECF # 36); and the Motion for Summary Judgment of Defendants, City of Cleveland and Michael McGrath (ECF # 37). Plaintiff has filed a consolidated Answer to Defendants' Motion[s] For Summary Judgment (ECF # 40), and Defendants filed reply briefs in support of their motions. (ECF # 46, 47). After careful consideration of the briefs and a review of all relevant authority, the Defendants' Motions are GRANTED.

## **PROCEDURAL AND FACTUAL HISTORY**[1]

Plaintiffs claims are based on the following facts and allegations, most of which are undisputed.

Plaintiff, Robert Fletcher's name, social security number, and date of birth were linked to another individual, Terry Shepherd, in connection with Mr. Shepherds prior criminal endeavors. Apparently, Mr. Shepherd lied and provided Mr. Fletcher's identifying information when he was arrested in up to four separate incidents, including two arrests for violation of state drug laws on November 1, 2001 and April 9, 2002.

On December 3, 2002, Plaintiff was sentenced to 6 months in the Painesville jail for theft. When admitted to the jail, an employee told him that records showed he should be serving three years for two drug trafficking offenses in Cleveland.  Plaintiff informed the employee that this was a mistake, and the employee said she "would take care of it."  Upon his release from the jail, the a warrant check was conducted and no warrants were discovered.  (Fletcher Depo. pp. 16-20). Mr. Fletcher failed to pay restitution in this case and was, therefore, subject to arrest in connection with this case between October 2, 2003 and April 30, 2007, and between June 4, 2007 and August 8, 2008.  (Fletcher Answers to Request for Admissions, No. 1,2; Fletcher Depo. pp. 74-75).

On August 6, 2008, Plaintiff was questioned by the Cuyahoga Metropolitan Housing Authority Police ("CMHA")at his residence in connection with a charge of disturbing the peace.

---

[1] The factual summary is based upon the parties' statements of facts.  Those material facts which are controverted and supported by deposition testimony, affidavit, or other evidence are stated in a light most favorable to Plaintiff, the non-moving party.

(Complaint ¶ 15). He alleges that the officer ran his information and came across two warrants listed under his name and social security number, but based on Mr. Shepherd's drug charges. (Complaint ¶ 15). The officer then took him to the Cuyahoga County Jail.   Plaintiff admits that he was legitimately subject to arrest on that date based on two warrants issued for his own criminal activity in the case of *Willoughby v. Fletcher*; that he was held by the county only until he could be picked up by Willoughby to serve his time; and, that he was released on the appropriate day (although allegedly delayed by two hours based on some confusion with the Shepherd warrants). (Fletcher Depo. Pp. 36-39, 41-43, 44, 74-75).

On September 20, 2008, Plaintiff was again taken into custody.  Plaintiff had gotten into an altercation with the attendant at a gas station, and when the Cleveland police came in, they told him to leave the station.  After being told to leave, Plaintiff admits that he re-entered the gas station, whereupon the police stopped him, ran his name, discovered the two outstanding warrants that were based on Mr. Shepherd's arrests, and took him in for processing.   (Fletcher Depo. pp. 48, 90).   Plaintiff at one point claimed that the police told him he would have been let go if he had not had any outstanding warrants, and at another point stated that the police told him he was arrested for returning to the store after he had been told to leave.  (Fletcher Depo. pp. 48, 90).  Plaintiff was detained in a Cleveland holding cell for approximately three hours, then released without charges.  (Fletcher Depo. pp. 48, 82).

On February 9, 2009, Plaintiff was arrested for petty theft, and spent three days in jail. After three days, he was taken to the county to be processed for the two drug related warrants listed under his name and social security number, but belonging to Terry Shepherd.   After the county fingerprinted him, he was released and advised to get a lawyer to help him disassociate

the Shepherd warrants from his name and social security number. (Fletcher Depo. pp. 55-56, 85-86).

Plaintiff alleges that he informed the City multiple times of the mistake with the Shepherd warrants, and asked for the records to be corrected. Apparently no corrective action was taken until after February 11, 2009.

Plaintiff originally brought this action against The City of Cleveland, Chief Michael McGrath (Chief of Police for the City of Cleveland), Bob Reid (Sheriff of Cuyahoga County), Gerald McFaul (Former Sheriff of Cuyahoga County), and several unnamed (John Doe) Defendants. (ECF # 1). The Complaint was amended twice. (ECF # 21, 27). The Second Amended Complaint eliminated the claims against Sheriff Reid and Mr. McFaul, effectively acting as a voluntarily dismissal of the claims against them, and added Cuyahoga County as a defendant. (ECF # 27). No attempt has been made to name the John Doe Defendants, and consequently they are considered to be dismissed from the action, as well.

Plaintiff's Second Amended Complaint raises claims for False Arrest/Malicious Prosecution (Count I, II); Negligence and Willful Inaction (Count II, III); and, violations of 42 U.S.C. § 1983, based on an alleged unreasonable seizure under the Fourth Amendment and deprivation of his substantive due process right under the Fourteenth Amendment (Counts IV and V).

**STANDARD OF REVIEW**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©. The burden of showing the absence of any such "genuine issue"

rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56©). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Once the moving party has satisfied its burden of proof, the burden then shifts to the

-5-

nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## **ANALYSIS**

A. State Claims

Plaintiff concedes that his state law claims are barred by the immunity afforded to political subdivisions in the performance of governmental functions as established in Ohio Revised Code Chapter 2744. (Answer, pg. 1). Plaintiff's state law claims (Counts I, II, and III) are, therefore, dismissed.

B. Federal Claims

    1. Cuyahoga County

Plaintiff makes no claims that he was ever arrested by the Cuyahoga County Sheriff's

Department; that he was ever detained by the Cuyahoga County Sheriff's Department for an excessive period of time; or, that the Cuyahoga County Sheriff's Department ever held him in connection with a facially invalid warrant.  Mr. Fletcher does contend that he was in the County's custody on two separate occasions: on August 7, 2008, following his arrest by the CMHA and prior to his transfer to Painesville/Willoughby to serve time for failure to pay restitution on an earlier theft case, and on February 9, 2009, when he was fingerprinted by the County prior to his release from the Cleveland Jail on a petty theft charge.  Neither of these incidents, even taken in the light most favorable to the Plaintiff's position, is sufficient to establish a constitutional violation.

Regardless of why the CMHA originally decided to pick him up, there is no dispute that Mr. Fletcher's August 7, 2008 detainment at the County Jail was legal and appropriate because he was legitimately subject to an active and valid warrant for arrest in his own theft case, *Willoughby v. Fletcher*.   The County was not involved in his original arrest, nor were they involved in the alleged delay when he was eventually released from custody on the *Willoughby* case.  There are simply no allegations that could support any finding of wrongdoing, let alone any Constitutional violation, associated with the County's brief detainment of the Plaintiff prior to his transfer to Painesville/Willoughby on an admittedly valid and legitimate warrant.

As to the detention associated with his February 9, 2009 release from custody following his arrest for petty theft, nothing in the Plaintiff's allegations would support a finding of any wrongdoing by the County, at the Constitutional level, or otherwise.  The only claims involving the County with regard to this incident allege that prior to his release from the Cleveland Jail following a valid arrest and detainment, Plaintiff was taken to the County (another floor in the

-7-

same building), fingerprinted, and released. Even if his very brief visit to the County floor had been precipitated by the existence of the Shepherd warrants, Plaintiff has not stated a claim for a Constitutional violation. As Plaintiff has acknowledged in his Answer to the Motions for Summary Judgment, the law is clear that a good faith arrest pursuant to a facially valid warrant is constitutional, and a short detention, even if mistaken, is not sufficient to amount to a deprivation of liberty that violates the Constitution. *See Baker v. McCollan*, 443 U.S. 137 (1978)*; Flemister v. City of Detroit*, U.S.C.A. No. 08-2548, Dec. 19, 2009 (slip copy)(not selected for publication), 2009 WL 4906904 (6th Cir. 2009). The U.S. Supreme Court and the Sixth Circuit have held that detentions as long as three or four days are considered insufficient to amount to a violation of the Constitution. A detention lasting a matter of minutes or hours, long enough to obtain fingerprints and compare them to information on a computer, certainly is not sufficient to rise to the level of a unconstitutional deprivation of liberty.

Further, even if Plaintiff had been able to establish that he suffered a constitutional violation. He has made no allegation against the County that would support a finding that the County caused the constitutional violation. In order to recover against the County, a policy or custom of the Sheriff "must be the moving force of the constitutional violation." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). According to the allegations in the Complaint, when the County found itself responsible for the Plaintiff, it took steps to properly identify the Plaintiff, compare his information to the information connected with Mr. Shepherd's warrants, and to immediately release him when the information showed that the warrants did not actually belong to him. There is no allegation that the County adopted or encouraged a policy or custom that resulted in the confusion surrounding the two warrants at issue. Rather, the confusion was

created by Mr. Shepherd's illegal act of misidentifying himself at Plaintiff during several different prior arrests.

2. Chief Michael McGrath

Plaintiff brought this action against Chief McGrath in his official capacity, and has raised no allegations that would suggest his relevant actions or inactions were performed in any capacity other than his official role as Chief of Police for the City of Cleveland. A federal suit against a municipal employee in his or her official capacity is treated as a suit against the municipality, itself. *See, e.g., Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003); *Claybrook v. Birchwell*, 199 F.3d 350, 355, n.4 (6th Cir. 2000).[2] Therefore, because the City of Cleveland is separately named in this action, the § 1983 claims against Chief McGrath are redundant,[3] and he should be dismissed from this action as a matter of law.

3. City of Cleveland

Plaintiff alleges that his constitutional rights were violated in three separate incidents. The City of Cleveland is in no way implicated in the first incident, as he was arrested by the CMHA, and he was detained at the County jail, and then by the Willoughby Police. There are no allegations that the City of Cleveland was involved in an way with this first incident. Further, as

---

[2] In fact, Plaintiff himself treats the claims against Chief McGrath and the claims against the City of Cleveland as one and the same, appearing to concede Defendant's point that the claims against Chief McGrath should be dismissed. The Plaintiff's Answer to the Defendants' Motion for Summary Judgment never once mentions claims against the Chief, and is directed solely at the claims against the City and the County.

[3] Suits against named individuals in their 'official capacity' "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978).

discussed above, Mr. Fletcher suffered no constitutional violation in the course of that incident. His arrest was legal and appropriate because he was legitimately subject to an active and valid warrant for arrest in his own theft case, *Willoughby v. Fletcher*, and he was detained at the County only as long as necessary to effectuate his transfer to Willoughby to serve the time he legitimately owed in that case.

The second incident arose after Plaintiff got into an altercation with the attendant at a gas station. The Cleveland police came in and told him to leave the station. After being told to leave, Plaintiff re-entered the gas station, whereupon the police stopped him, ran his name, discovered the two outstanding warrants that were based on Mr. Shepherd's arrests, and took him in for processing. (Fletcher Depo. pp. 48, 90). Plaintiff at one point claimed that the police told him he would have been let go if he had not had any outstanding warrants, and at another point stated that the police told him he was arrested for returning to the store after he had been told to leave. (Fletcher Depo. pp. 48, 90). Plaintiff was detained in a Cleveland holding cell for approximately three hours, then released without charges. (Fletcher Depo. pp. 48, 82). Whether or not the Cleveland Police would have let him if the Shepherd warrants had not existed, Plaintiff does not dispute that the warrants were facially valid, nor does he dispute that a good faith arrest pursuant to a facially valid warrant is constitutional. *See Baker v. McCollan*, 443 U.S. 137 (1978). He makes no allegations that the officers arrested him in bad faith. Therefore, there is no real dispute that the arrest was constitutional, even if it based upon a mistake. Plaintiff also concedes that his detention in this instance was a short duration (approximately three hours), and that a short detention following an arrest based on mistaken identity does not constitute a constitutional violation. *Id*; *Flemister*, U.S.C.A. No. 08-2548. Therefore, Plaintiff suffered no

constitutional violation in connection with his September 20, 2008 arrest and detention.

Plaintiff also fails to establish any constitutional violation associated with the final incident: his February 9, 2009 arrest for petty theft.  There is no question that his arrest in that case was caused by his own actions (i.e. the commission of petty theft), and was unrelated to the Shepherd warrants.  Plaintiff alleges only that after he served his time with the City of Cleveland, based upon this legitimate arrest, he was moved to another floor to be held by the County while his fingerprints were taken and run through the system.  While in the County's custody, the Shepherd warrants again came to light, but Plaintiff was properly identified, cleared of any connection and immediately released.   Therefore, Plaintiff suffered no constitutional violation during this incident.

Plaintiff's Answer to the Motions to Dismiss basically concedes that each individual incident was free from any constitutional violation, but Plaintiff contends that the repeated failure to correct the information associated with the Shepherd warrants collectively amounted to a constitutional violation by the City of Cleveland.  Plaintiff bases this argument in part on an 8th Circuit opinion that held an individual can maintain a 1983 action based on false detention, "where there is evidence that the officer in question was deliberately indifferent to the information that would indicate that the detention was unlawful."  This standard cannot be met by the Plaintiff.  Officers from the City of Cleveland were associated with two arrests, only one of which was arguably based on the Shepherd warrants (Sept. 20, 2008).  The second arrest was undisputably lawful and was not based upon the Shepherd warrants (Feb. 9, 2009). Following Plaintiff's arrest on September 20, 2008, once Plaintiff informed the Officer(s) that the warrants were based on mistaken identity, the officers investigated and Plaintiff was released within three

hours, without charges.  This does not indicate deliberate indifference to the information "that would indicate the detention was unlawful."  Further, the allegations do not support a charge that the City of Cleveland repeatedly violated Plaintiff's rights based on the Shepherd warrants, thereby creating a collective harm that went beyond the harm allegedly incurred during any individual incident.  As set forth above, the City of Cleveland was only associated with two of the three alleged incidents, and of those two, there is no dispute that the second was a proper arrest, not precipitated by the Shepherd warrants.  This leaves the second arrest standing alone, and eliminates any argument that there was a collective harm imposed by the City of Cleveland.

Further, even if Plaintiff had been able to establish a constitutional violation, he has failed to demonstrate that the City had any policy, custom, or practice in place that would have been the moving force behind the violation.  *See Monell v. New York City Dept. Of Social Services*, 436 U.S. 658 (1978).   A municipality cannot be liable under Section 1983 for the actions of its employees based on a theory of *respondeat superior* or vicarious liability.  *See, e.g., City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  The allegations in the Complaint allege that unidentified employees of the City failed to correct an error that they knew or should have known existed and could be likely to harm the Plaintiff in the future.  However, this will not support a claims against the municipality.

In order to maintain an action against the municipality, Plaintiff would have to show that the policymaker for the City, through deliberate action or inaction, was the moving force behind the constitutional violation, whether by establishing a policy, practice or custom of encouraging, enabling, or permitting individuals to be arrested and/or detained based on mistaken information in a warrant.  *See, e.g., Monell*, 436 U.S. 658.  Plaintiff has made no allegation that City's

policymaker (the Director of Public Safety)[4] was even aware of the problem with the Shepherd warrants, let alone that this is an on-going practice affecting other individuals.  Further, he has offered no evidence whatsoever that anyone in authority was aware of or indifferent to the problem;[5] that the problem was pervasive enough to constitute a practice or custom of the City; or that individuals who may have been negligent in correcting a known problem were enabled or encouraged to disregard the potential harm to citizens.  Therefore, Plaintiff has failed to demonstrate a constitutional violation or any practice, custom or policy of the City that would have led to such a violation.

## **CONCLUSION**

For the reasons set forth above, the Defendants Motions for Summary Judgment are GRANTED.  (ECF # 36, 37).   The case is dismissed.  IT IS SO ORDERED.

    /s/ Donald C. Nugent
Judge Donald C. Nugent
United States District Judge

Date:   June 23, 2010

---

[4] The Sixth Circuit has held that the policy maker for purposes of a Section 1983 claims based on allegedly unconstitutional police practices is the Director of Public Safety, not the police chief.  *See Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993).

[5] Plaintiff opined that upper level policy makers including Chief McGrath were aware of the problem of identity theft. (Plaintiff's Answer, ECF #40, p. 7).  However, he provides no evidence, whatsoever, to support this opinion.